Mason & Dibble *vs.* Mason.

ANDREW J. MASON and MASON & DIBBLE, plaintiffs in error, *vs.* SARAH MASON, defendant in error.

1. Whether a bill in equity, by *cestui que trust, feme covert*, against trustee and a stranger, alleging that trustee has loaned trust funds to stranger, who has not paid, but alleging neither refusal of trustee to sue, nor stranger to pay; alleging, further, that trustee is insolvent, but not showing when insolvency commenced, and alleging no waste or misconduct; and praying for removal of trustee and appointment of another, and decree that stranger pay to new trustee, is demurrable for want of equity. Query?

2. Where the trustee of a *feme covert*, thereto authorized, loans money to a stranger, (the latter knowing that it is a trust fund,) and takes a note payable to himself as trustee, in the absence of all fraud and conspiracy, the statute of limitations is a good defence to the stranger, as well in equity against the *cestui que trust*, as at law against the trustee.

Demurrer, in Bibb Superior Court. Decision by Judge LOCHRANE, at May Term, 1862.

The complainant, Sarah Mason, formerly Sarah Brown, by her next friend, E. A. Nisbet, brought this bill against her husband, Andrew J. Mason, and the firm of Mason & Dibble, composed of Timothy Mason and William Dibble, setting up that, before her marriage to said Andrew J. Mason, a marriage contract was entered into between them without the intervention of a trustee, whereby it was provided that all the property, real and personal, then belonging to complainant, in value about $5,000, and whatever she was then, or might be afterwards, entitled to, at and by the death of her mother, should be her separate estate, and in no manner subject to her husband's debts, or his disposition, save as provided for in the contract. That the husband should have the possession and management of the property, subject to the limitations and restraints provided for in the contract, and that he might use as he thought proper the artificial increase of the property, and should also have the power, with the consent of complainant, to sell and exchange the property, and that the proceeds of such sales, or the property so exchanged, should become a portion of the trust estate, and be subject to

the provisions of the marriage contract. It was further stipulated in the contract, that the survivor of the parties thereto should inherit the whole estate therein specified, provided there should be no child or children born of the marriage living at the death of either party; and if there should be such child or children, then the survivor to inherit equally with the child or children, share and share alike.

No trustee being appointed by the contract, her husband became such by operation of law, and she alleges that his marital rights to the estate was barred, and that it was her separate estate for life with limitations over, as before stated, to the survivor, or to the survivor and the children of the marriage.

Complainant charges, that on the 5th of February, 1850, her husband sold a negro belonging to her life estate, for the sum of $800, cash, and loaned the money arising from the sale to Mason & Dibble, taking their note therefor, payable to himself, as trustee for complainant, or bearer, and dated the 5th of February, 1850, and due one day thereafter. The bill charges that Mason & Dibble received said money with full knowledge that it was raised by the sale of the negro, and that the negro belonged to complainant and her children, under the marriage settlement. It is further averred that the husband has been for a number of years insolvent, and is unable to respond to her for the interest on said note, and that the whole sum will be lost to her and her children unless Mason & Dibble be decreed to pay to her trustee the amount of principal and interest due on said note. Complainant has children living, the fruit of the marriage.

The bill prays that another trustee may be appointed in lieu of the husband, and that Mason & Dibble be decreed to account with oratrix for the amount due on said note, and to pay the same to the trustee appointed, to be by him held for the uses and trusts declared in the marriage settlement.

The defendants demurred to the bill for want of equity, and also demurred specially that, it was apparent from the face of the bill, that the note sought to be recovered wasbarred by the statute of limitations at the time the bill was brought.

Mason & Dibble *vs.* Mason.

The bill was filed April 12th, 1861. The Court overruled the demurrer on all the grounds, and the defendants except.

W. POE, for plaintiff in error.

E. A. NISBET, *contra.*

*By the Court*—JENKINS, J., delivering the opinion.

1. The first ground of demurrer in the Court below was the general one of a want of equity in the bill, by which we understand, that it appears from the allegations that there is at common law a remedy for the grievance complained of. What is that grievance? That the defendants, Mason & Dibble, made to their co-defendant, as trustee of the complainant, his wife, a promissory note which they have not paid. No fraud or collusion is charged in the case. It is alleged that the consideration of the note was money loaned by the payee to the makers, which money at the time was known to the makers to belong to complainant's trust estate. But the bill also shows, that the note given as evidence of the debt was made payable to A. J. Mason, as trustee of Sarah E. Mason. So that in the inception of the contract there was no act done by the parties, whereby the interest of the *cestui que trust,* in the fund loaned was divested, or sought to be divested. Was there any breach of trust in the act of loaning this fund? It is alleged that the fund accrued from the sale of a negro by the trustee. This sale he was authorized to make with the consent of the complainant. And, now in recounting the transaction, eleven years after it occurred, she neither alleges that she was ignorant of the sale of the negro, and loan of the proceeds of the sale at the time, nor that either was done without her consent.

She does not make a case showing an illegal conversion of the negro. We must presume then that this fund came legally and properly into the hands of the trustee, as a part of the trust estate. Another provision of the trust deed is, that the proceeds of any sale of the trust property should "become a portion of the trust estate, and be subject to the

provisions of the contract." The loaning of trust funds at interest with sufficient security, is a very common and proper mode of employing them, and whilst in the evidence of debt, or the security taken for such loan, the identity of the fund as a part of the trust estate is preserved, and reasonable precautions taken for its safety, equity will recognize its legality. All this seems to have been done in this case. The note is made payable to A. J. Mason, as trustee of the complainant ; all parties are therefore estopped from denying the trust character of the debt, and it is not questioned that the makers, are able to pay it. In most cases of like character, then, the remedy for enforcing payment would be an action at law, by the trustee against the makers, upon the note. We are thus particular in this view of the case, because both in the bill and in the argument, much stress is laid upon the scienter of the makers of the note. If the act of the trustee was legal, the scienter of the other party, dealing with him, can impose no liability on the latter, not resulting immediately from the contract.

But are there no cases, in which equity will entertain a complaint, of a *cestui que trust*, based primarily upon just such a transaction? Had this complainant alleged, that the makers of the note had refused payment, that upon her solicitation the trustee had refused to institute suit for recovery of the fund, that the note would soon become barred by the statute of limitations, that the trustee was insolvent and unable to respond to any portion of the estate lost by his laches or collusion—and finally charging fraud and collusion between the trustee and the debtors, it will scarcely be maintained that such a bill would be demurrable. But that is not this case.

Again. Had it been alleged that the trustee had, since the making of the note, become insolvent, or having been previously insolvent, had since become profligate and wasteful, an unsafe depository of trust funds—that the complainant apprehended the payment of the money to him, and its loss to the trust estate, praying the removal of the trustee, and appointment of another in his place, and that the debt-

ors be enjoined from paying the note until a new trustee be appointed, there would seem to be much equity in the bill; and it might be fairly questioned whether, if equity took cognizance of the case for those purposes, it would not, to do complete justice, and avoid a multiplicity of suits, decree payment of the money in the absence of any sufficient defense, to the new trustee. Most clearly, however, in that event any defense which the debtor would have at law would be allowed him in equity. Neither is *this* exactly the case before us.

Allegations of some of the facts supposed above are wanting, but the difference is so small that we would hesitate on this ground to overrule the judgment and sustain the demurrer.

2. But there is, in the second ground of demurrer, a far more serious obstacle in the way of the complainant, viz: "That, as appears on the face of the said bill, the contract or note sought to be recovered, in and by said bill, was at the time said bill was filed, fully and entirely barred by the statute of limitations." It was conceded in the argument that as between the trustee (payee of the note,) and the the makers, it is so barred.

It is urged in behalf of plaintiff in error, that "time is no bar to an express trust." We concede that time is no bar to an express, *continuing* trust. But this doctrine regarded as settled law since the case of Kane and Bloodgood, 7 Johnson's Chancery Reports, 90, is applied as between *cestui que trust* and trustee. So it will be found in McDonald *vs.* Sims *et al.*, 3d Kelly, 383, the Court held that in the marriage articles, which were the foundation of the after settlement, there was express provision made for the claim of McDonald, and that the trustee in that settlement took the property encumbered with a lien for the payment of that claim, which established in him an express trust. So in Thomas vs. Brinsfield, 7th Georgia, 154, the Court refused to disturb the bar of the statute because the trust was not express and continuing.

Again, it is insisted that a *cestui que trust, feme covert*, is

within the exception in the statute of limitations, and Flynt and wife vs. Hatchett, 9 Georgia, 328, is relied upon as authority. But that was a case of rights accruing under a deed of trust, asserted against the trustee.

This is a case, in which the *feme covert* is seeking to enforce rights, under a simple contract, between her trustee and a stranger, authorized by the deed of trust, and which contract is actually barred by the statute of limitations, and no special equity is alleged, avoiding the bar. It is not her contract. She was incapable of contracting when it was made. She had a legal representative, appointed by herself, before she became *covert*, and in anticipation of coverture, authorized to make such contract. By him the contract was made, long subsequent to her coverture, and against him the statute commenced running so soon as the contract matured. The bar was complete before she asserted her equity, and in its assertion, she alleges no fraud, no special circumstances modifying the action of the statute of limitations upon the legal contract.

It is said that if in this case there be a statutory bar at all, it is one applicable to sealed instruments, for that she is seeking to enforce the trust deed, and to this point again the case of Flynt and wife is cited. As before remarked, complainant's rights in that case were wholly involved in the trust deed, and were asserted against the trustee. Here the recovery is sought under and by virtue of a promissory note, against its makers only, and they are strangers to the trust deed. The trust deed is set out, and other allegations made only to show that complainant has a beneficial interest, an equity in the note, but if a recovery were had against Mason & Dibble, it could be only upon the note. Strike that, and the averments concerning it, from the bill, and all connection between them and the case ceases. If the recovery against them could be only on the note, the statutory bar they set up must be applied to the note.

The following points were also presented:

" *Cestui que trust* can follow the property in the hands of a purchaser, with notice of the trust. If trustee fail to do his duty, or violate his trust, and sell the property, both he

and his privy are liable to *cestui que trust.*  Purchasers with notice are privies to the trustee."

This is all good law, in its place, but has no application here.  Mason & Dibble had no connection whatever with any sale, rightful or wrongful, of the negro.  The trustee presented himself to them with a certain fund which he said belonged to the trust estate, and which complainant now says belonged to it.  As such, they borrowed it, giving a promissory note, payable to the trustee.  We have said that, according to the allegations in the bill, that was a legal transaction, in no way violative of the trust.  Upon that simple contract, then, rests their liability.  If that be barred by the statute, without any erroneous practice on their part, their liability is at an end. No constructive trust is raised by the bill between complainant and Mason & Dibble; there is certainly no express trust.

The statute of limitations runs, as between *cestui que trust* and trustee on the one hand, and strangers on the other. Hill on Trustees, 736 and 738.  That is this case, and on this special demurrer we reverse the judgment of the Court below.  Let the judgment be reversed.